# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 3:16-cr-00039 |
| v. | : |
| | : Judge Thomas M. Rose |
| JOSUE MORALES-MEDINA, | : |
| Defendant. | : |

---

## ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 39)

---

This case is before the Court on the Motion for Compassionate Release (Doc. No. 39) (the "Motion"), filed by Josue Morales-Medina ("Morales-Medina"). Morales-Medina was incarcerated at the Moshannon Valley Correctional Facility in Pennsylvania ("Moshannon Valley") at the time he filed his Motion, and BOP records indicate that he is currently incarcerated at Oakdale II FCI in Louisiana. (Doc. No. 39; FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited May 11, 2021).) He asks the Court for compassionate release from his term of imprisonment. More specifically, he asks that this Court "order a reduction of his prison sentence to time already served, pursuant to 18 U.S.C. § 3582(c)." (Doc. No. 43 at PageID 144.) For the reasons discussed below, the Court **DENIES** Morales-Medina's Motion.

### I. BACKGROUND

On March 21, 2016, the United States of America (the "Government") filed a single-count Information against Morales-Medina, charging him with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 for conspiracy to distribute and possess with intent to distribute 100 grams

1

or more of a mixture or substance containing a detectable amount of heroin. (Doc. No. 19.) On or about May 20, 2016, pursuant to a plea agreement, Morales-Medina pleaded guilty to the offense in the Information. (*See* Docs. 20, 29, 30.) The Statement of Facts attached to the Plea Agreement, signed by Morales-Medina, states:

> On or about November 16, 2015, JOSUE MORALES-MEDINA conspired with others to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin.
>
> On that date, Ohio State Highway Patrol troopers stopped Defendant in a vehicle on Interstate 75 near the Stewart Street exit in Dayton. Inside the vehicle, Defendant possessed approximately $298,000 in cash that he knew was drug trafficking proceeds from the sale of heroin and which he was transporting in furtherance of the drug trafficking conspiracy.
>
> That same day, investigators also traveled to a home located at 328 Hillway Drive in Dayton, which lies in the Southern District of Ohio. Inside the home (used by Defendant and others to store and distribute controlled substances), investigators found a firearm along with 808 grams of a Heroin/Fentanyl mixture and 8,205 grams of Fentanyl.
>
> For the Court's information, Fentanyl is a Schedule II controlled substance, and Heroin is a Schedule I controlled substance.

(Doc. No. 20 at PageID 51.)

The Final Presentence Investigation Report ("PSI") regarding Morales-Medina provided additional information about the circumstances of the offense, and it identified five prior adult criminal convictions and a few other minor convictions. (PSI ¶¶ 14-17, 44-49.) Morales-Medina's criminal history included convictions for: terroristic threats that involved a weapon, in 1996; a conviction in 1997, after which Morales-Medina was deported to Mexico; a conviction for failure to appear, also in 1997; a conviction for illegal alien found in the U.S. following deportation in 2001, after which Morales-Medina was deported to Mexico; and a conviction for illegal entry in 2010, after which Morales-Medina was deported to Mexico. (*Id.*) As the PSI succinctly states: Morales-Medina "has previously been deported from the U.S. on multiple occasions." (*Id.* at ¶

2

56.) The PSI also indicated that Morales-Medina accepted responsibility for his actions involved in the offense in this case. (*Id.* at ¶ 21.)

At sentencing, the Court imposed a 108-month term of incarceration, four years of supervised release with special conditions, and a $100 special assessment. (Doc. Nos. 29, 30.) The term of incarceration aligned with the recommended sentence, pursuant to Rule 11(c)(1)(C), although the Guideline Provisions range was 188 to 235 months. (PSI at Sentencing Recommendation p. 1.) Morales-Medina is currently 45 years old and has an anticipated release date of August 16, 2023. (*See* https://www.bop.gov/inmateloc.) The Government acknowledges that, to date, Morales-Medina has already served approximately 72 months of his 108-month sentence in custody. (Doc. No. 44 at PageID 154.)

Morales-Medina filed various documents in support of the Motion (Doc. Nos. 39-1, 39-2), and his appointed counsel filed a Supplement (Doc. No. 43). The Government filed a Response to the Motion (Doc. No. 44) (the "Response"), in which the Government opposes the relief sought in the Motion. Morales-Medina's counsel then filed a reply in support of the Motion (Doc. No. 45) (the "Reply"). The matter is ripe for review and decision.[1]

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, Morales-Medina initially sent a request to the Warden of Moshannon Valley, seeking compassionate release. (Doc. No. 39-2 at PageID 131-35.) The parties agree that either the warden denied the request or the warden took no action in response to the request. (Doc. No. 39-2 at PageID 136-37; Doc. No. 43 at PageID 145; Doc. No. 44 at PageID 155.) Regardless, the Government does not contest exhaustion, so the Court proceeds with the understanding that Morales-Medina could move for compassionate release on his own behalf.

## II. ANALYSIS

### A. Legal Standards

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) ("[s]ince the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from modifying a term of imprisonment once it has been imposed") (alterations adopted) (internal quotation marks omitted). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The decision to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step test, based on three substantive requirements. *United States v. Jones*, 980 F.3d 1098, 1106-08 (6th Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i). At step one, a court must find that extraordinary and compelling reasons warrant a sentence reduction.[3] *Jones*, 980 F.3d at 1107-08. At step two, a court must find that such a reduction is consistent with <u>applicable</u> policy statements

---

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.
[3] "Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii)." *Jones*, 980 F.3d at 1108 n. 12.

issued by the Sentencing Commission. *Id.* at 1108. At step three, a court must consider any applicable Section 3553(a) factors and, in its discretion, find that the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case. *Id.* A court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, a court cannot grant such a motion unless the court addresses "all three steps." *Id.*

Regarding the first step, "Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004. Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). But apart from this instruction, "Congress delegated to the Sentencing Commission the responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)." *Jones*, 980 F.3d at 1108-09 (alterations adopted) (internal quotation marks omitted). The Sentencing Commission's policy statement regarding compassionate release under Section 3582(c)(1)(A) resides in § 1B1.13 of the United States Sentencing Commission Guidelines Manual. *Id.* at 1109; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"). However, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018." *Jones*, 980 F.3d at 1109. Therefore, and for reasons more fully explained in *Jones*, the Sixth Circuit held that—until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act—district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" in cases

where an incarcerated person files a motion for compassionate release.[4] *Id.* at 1109-11 ("[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion"); *see also United States v. Harvey*, No. 20-1944, 2021 U.S. App. LEXIS 12652, 2021 WL 1661503, at *3 (6th Cir. Apr. 28, 2021) ("without an applicable policy statement, district courts have significant, though not unlimited, discretion to define extraordinary and compelling reasons for relief on their own initiative").

Regarding the second step, again, the Sentencing Commission's policy statement regarding compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in U.S.S.G. § 1B1.13. *Jones*, 980 F.3d at 1109. However, the Sixth Circuit held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.*; *see also Elias*, 984 F.3d at 518 ("§ 1B1.13 is not applicable to inmate-filed compassionate-release motions"). Thus, U.S.S.G. § 1B1.13 currently is <u>not</u> an "applicable policy statement[] issued by the Sentencing Commission" in such cases. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1101, 1109. So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at

---

[4] In *Elias*, while not mandating that future courts apply the two-part test used by the district court in that case, the Sixth Circuit held that the district court did not abuse its discretion in applying a "two-part test for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520-21 (the district court did not abuse its discretion in relying on that two-part test; the district court properly considered the Centers for Disease Control and Prevention (CDC) guidance in effect at the time, a scientific journal, and information from the BOP concerning the number of reported COVID-19 cases at the prison). Additionally, the Sixth Circuit held that a district court may deny a motion for compassionate release if the defendant does not provide any records in the motion to support his or her claimed medical ailment(s). *Id.*

6

least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act. *Jones*, 980 F.3d at 1111.

Regarding the third step, "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. The factors set forth in Section 3553(a) "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005. More specifically, 18 U.S.C. § 3553(a) states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (ii) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], are in effect on the date the defendant is sentenced; or

  (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

  (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

  (B) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's

successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions. *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008-09. Of course, not all of these items will be applicable or relevant (or known to the court) in all cases, and other items may be applicable or relevant. *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

Finally, "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *Jones*, 980 F.3d at 1106; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Ruffin*, 978 F.3d at 1005 (a "district court has substantial discretion" in deciding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A)); *Elias*, 984 F.3d at 518 (a district court may reduce the term of imprisonment if all three of the substantive requirements are met, "but need not do so").

### B. <u>Application</u>

Morales-Medina asks that the Court reduce his custodial sentence to time already served. According to Morales-Medina, since the time that he "began his term of incarceration, he has been diagnosed with multiple chronic health conditions, including diabetes, hypertension, and high cholesterol." (Doc. No. 43 at PageID 145.) He submitted medical records that, at least, support his diabetes diagnosis and demonstrate he has been prescribed medications to address his asserted ailments. (Doc. No. 39 at PageID 116; Doc. No. 39-2 at PageID 127-28.) He argues that "extraordinary and compelling circumstances warrant a reduction in his sentence," he would not be "a danger to the community if he were to be released [because] he will be deported to Mexico upon his release, and his request is consistent with the factors contained in 18 U.S.C. § 3553(a)." (Doc. No. 43 at PageID 151.) He cites as factors to support his claim that extraordinary and

9

compelling circumstances justify his release that the current global pandemic regarding COVID-19 disproportionately affects the prison system and that he is at increased risk of severe complications from the virus. (*Id.* at PageID 149-50.) Among other things, Morales-Medina also indicates that he has developed a proposed release plan and asserts that his "offense of conviction, while serious, was nonetheless nonviolent in nature." (*See, e.g.,* Doc. No. 39-1; Doc. No. 43 at PageID 150-51.)

In response, the Government argues that the Bureau of Prisons ("BOP") has taken significant measures to protect inmates during the COVID-19 pandemic, including working to make vaccines available to staff and inmates as quickly as possible. (Doc. No. 44 at PageID 155-57.) The Government also points out that that PSI indicated that Morales-Medina had no health conditions at the time of the report "other than suffering from pain after physical labor due to being shot twice—once in Phoenix, Arizona in 1996, and once in Las Vegas, Nevada in 1997." (*Id.* at PageID 154 (citing PSI at ¶ 57).) The Government asserts that consideration of the 18 U.S.C. § 3553(a) factors demonstrate that the relief sought is unwarranted. (*Id.* at PageID 160-62.) This assertion is primarily based on the nature of the crime and Morales-Medina's criminal history. (*Id.*)

Regarding step one, the Government concedes that Morales-Medina's Type 2 diabetes mellitus is support by his medical records and that he "present[s] extraordinary and compelling reasons warranting reduction in sentence." (Doc. No. 44 at PageID 155, 160.) Regarding step two, given that Morales-Medina (an incarcerated person) filed the Motion, the Court "may skip"— and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

However, that does not end the Court's inquiry. There is still the third step: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion, the reduction is warranted in whole or in part under the particular circumstances of this case. *Elias*, 984 F.3d at 519; *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

The Court has considered the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes that the Court considered Morales-Medina's history and characteristics, such as his asserted behavior in prison, rehabilitation efforts, and educational or vocational training while incarcerated (Doc. No. 39). *See* 18 U.S.C. § 3553(a)(1). Morales-Medina also accepted responsibility for his actions. And, the Court acknowledges the challenging conditions at the nation's federal prisons during the current COVID-19 pandemic and Morales-Medina's health issues. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). As Morales-Medina acknowledges, the offense for which he is currently incarcerated was serious. (Doc. No. 45 at PageID 164.) While the Court agrees with him that, with respect to that particular offense, "there is no allegation … that Defendant brandish a weapon or otherwise behaved in a violent or threatening manner" (*id.* at PageID 165), the Statement of Facts attached to the Plea Agreement indicates Morales-Medina's participation in significant drug trafficking activities—during the opioid epidemic in Ohio—that involved heroin and fentanyl. (Doc. No. 20 at PageID 51.) Both heroin and fentanyl are dangerous, and potentially lethal, controlled substances. *United States v. Harris*, 774 F. App'x 937, 941 (6th Cir. 2019) (quoting the United States Sentencing Commission in U.S.S.G. App. C, amendment 807 (2018) concerning

U.S.S.G. § 2D1.1 as stating that, "[b]ecause of fentanyl's extreme potency, the risk of overdose is great, particularly when the user is inexperienced or unaware of what substance he or she is using"); *United States v. Pooler*, No. 3:18-cr-137, 2020 U.S. Dist. LEXIS 224934, 2020 WL 7046964, at *8 (S.D. Ohio Dec. 1, 2020) ("[f]entanyl in particular is a dangerous, and potentially lethal, controlled substance"); *Titan Indem. Co. v. Cameron*, 77 F. App'x 91, 96 (3d Cir. 2003) (heroin is "a dangerous drug that creates the risk of death"); *see also United States v. Robinson*, 892 F.3d 209, 215-16 (6th Cir. 2018) (affirming sentence that considered the effect of the opioid epidemic in Ohio). This weighs against warranting a sentence reduction. *Id.*; 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C).

Additionally, while the Court agrees with Morales-Medina that the first two prior criminal convictions listed in his PSI occurred over two decades ago and perhaps sound worse than they actually were (after considering their circumstances) (*see* PSI ¶¶ 44-45), Morales-Medina's criminal history also demonstrates that he has continuously entered into this country illegally and then committed crimes (*id.* at ¶¶ 45-48, 56). Morales-Medina was in this community illegally when he participated in the conspiracy to distribute a controlled substance, despite having been deported (at least) three times before. (*Id.*) Although the Court hopes and expects Morales-Medina will keep his promise to stay in Mexico upon release and adhere to his proposed release plan, this history shows a lack of respect for the law and counsels against granting compassionate release. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(C). The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(C), (a)(6).

Having considered the factors set forth in Section 3553(a) to the extent that they are applicable, the Court finds that the requested reduction in the term of imprisonment is not warranted. *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *Harvey*, 2021 WL 1661503, at *1, 3 (affirming denial of compassionate release motion, despite petitioner's chronic bronchitis, the spread of COVID-19 cases at his prison, and his status as a non-violent offender with no disciplinary actions against him in prison).

### III.   CONCLUSION

Although the Court recognizes Morales-Medina's asserted medical ailments and is sympathetic to his arguments about the fear of contracting COVID-19, the circumstances here do not warrant a reduction in the term of imprisonment pursuant to Section 3582(c)(1)(A). For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. No. 39).

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, May 12, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE